AMERICAN FAMILY INSURANCE COMPANY *et al.*, Plaintiffs-Appellants, v. VILLAGE PONTIAC-GMC, INC., *et al.*, Defendants-Appellees.

Second District   No. 2—91—0435

Opinion filed January 16, 1992.

William C. Potratz and Roger A. Bixby, both of Bixby, Lechner & Potratz, P.C., of Chicago, for appellants.

Diane I. Jennings and John T. Williams, both of Lord, Bissell & Brook, of Chicago, and Michael J. Toussaint, Kathryn M. James, and Jay S. Judge, all of Judge & James, Ltd., of Park Ridge, for appellees.

PRESIDING JUSTICE REINHARD delivered the opinion of the court:

American Family Insurance Company, Farmers Insurance Company and William and Nancy Gill, plaintiffs, appeal from the orders of the circuit court of Du Page County which granted Village Pontiac-GMC, Incorporated's, and General Motors Corporation's, defendants', motions for sanctions pursuant to Supreme Court Rule 219 (134 Ill. 2d R. 219) and summary judgment.

Plaintiffs essentially raise two issues on appeal: (1) whether the trial court erred in barring evidence as a sanction pursuant to *Graves v. Daley* (1988), 172 Ill. App. 3d 35, 526 N.E.2d 679; and alternatively (2) even if the trial court properly barred certain evidence, whether the trial court erred in granting defendants' motions for summary judgment.

As shown through the pleadings, the motion for summary judgment and the response thereto, the facts in this case are the following. On October 1, 1981, William and Nancy Gill purchased a 1981 Pontiac Grand Prix from Village Pontiac-GMC, Incorporated (Village Pontiac), in Naperville, Illinois. The car was a demonstrator model. On October 7, 1981, William and Nancy Gill picked up the car from Village Pontiac. On the way home, several problems with the car occurred: the voltage regulator light was flashing red; the lights went dim; the car smelled as if it were burning, which was described as "a hot smell"; and the taillights went out.

Early in the morning of November 9, 1981, a fire occurred at the Gills' home. The fire severely damaged the home and other personal property. The next day, Nancy Gill telephoned Village Pontiac and told the service director that a fireman had told her that the car caused the fire.

On November 10 and 11, 1981, John K. Maurus investigated the fire for the Gills' homeowner's insurer, American Family Insurance Company. Maurus' opinion, which was based in part on the opinions of Richard W. Kraugh, an electrical engineer hired by Maurus, was that the origin of the fire was the area along the trunk light wire beneath the left end of the rear seat, and the cause of the fire was a short circuit which resulted when a copper trunk light circuit wire with

damaged insulation contacted a grounded wire. Maurus removed the copper wire which he believed caused the short circuit.

The Gills subsequently transferred title of the car to their automobile insurance company, Farmers Insurance Company. The car was destroyed seven months later by a salvage company after Farmers Insurance had transferred the title.

On January 22, 1991, the court granted General Motors Corporation's (General Motors') motion to bar evidence regarding the car because it was destroyed. The order stated that "[p]laintiffs are barred from presenting any evidence, direct or circumstantial, concerning the condition of the Pontiac Grand Prix which is at issue in this case, at the trial of this cause." On March 18, 1991, the trial court granted defendants' motions for summary judgment based on plaintiffs' inability to use any evidence concerning the condition of the car.

Plaintiffs contend that the trial court erred in applying the holding of *Graves v. Daley* (1988), 172 Ill. App. 3d 35, 526 N.E.2d 679, to this case. Essentially, plaintiffs contend that because all the evidence relating to the cause of the fire, including photographs, two wires and testimony concerning the scene, had not been destroyed, the trial court erred in barring any evidence relating to the condition of the car.

In *Graves v. Daley* (1988), 172 Ill. App. 3d 35, 526 N.E.2d 679, the appellate court upheld a trial court's order barring all evidence relating to the condition of a furnace which was alleged to be the cause of a fire and which was destroyed by plaintiff prior to initiation of the litigation. (172 Ill. App. 3d at 38, 526 N.E.2d at 681; see also *Fire Insurance Exchange v. Zenith Radio Corp.* (1987), 103 Nev. 648, 747 P.2d 911.) We believe that *Graves* is sound law and should be followed under the facts in the instant case.

Although other Illinois Appellate Court decisions have upheld sanctions for destruction of evidence in violation of a court order (*Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 1058, 473 N.E.2d 444) and for failing to comply with discovery orders after the evidence has been lost (*Stegmiller v. H.P.E., Inc.* (1980), 81 Ill. App. 3d 1144, 1147, 401 N.E.2d 1156), it is similarly sound that sanctions may also be imposed despite the absence of a court order barring destruction (R. Johnston & K. Kandaras, Discovery in Illinois 181 (1985)).

■ Supreme Court Rule 219(c) authorizes a trial court to bar testimony if a party unreasonably refuses to comply with discovery rules and if the sanction is just. (134 Ill. 2d R. 219(c)(iv).) Supreme Court Rule 214 allows a party to request the production of tangible things for inspection and testing. (134 Ill. 2d R. 214.) Although the Illinois

Supreme Court has not defined the phrase "unreasonable refusal to comply" (*Wilkens v. T. Enterprises, Inc.* (1988), 177 Ill. App. 3d 514, 517, 532 N.E.2d 469), it has been defined in an appellate court decision as a deliberate and pronounced disregard for a discovery rule (*Lavaja v. Carter* (1987), 153 Ill. App. 3d 317, 322, 505 N.E.2d 694). In determining unreasonable noncompliance, a court may focus on the importance of the information a party is seeking to have produced. (Comment, *Policing Discovery Under Illinois Supreme Court Rule 219(c): A Search for Judicial Consistency*, 21 Loy. U. Chi. L.J. 973, 982 (1990).) Production requests pursuant to Supreme Court Rule 214 may be frustrated by the destruction of the item sought. (Johnston & Kandaras, Discovery in Illinois, at 180.) Pretrial access to documents, tangible objects or property is often crucial to amassing a claim or defense. (Johnston & Kandaras, Discovery in Illinois, at 163.) Imposition of sanctions under Supreme Court Rule 219 is a matter within the discretion of the trial court, and a reviewing court will not disturb a trial court's decision absent an abuse of discretion. *Wyrick v. Time Chemical, Inc.* (1989), 191 Ill. App. 3d 1041, 1044, 548 N.E.2d 524.

In this case, plaintiffs intentionally allowed the most crucial piece of evidence in this case to be destroyed. Plaintiffs should have known that potential defendants to a case alleging negligence and product liability would undoubtedly want to inspect, as plaintiffs' experts had done, and perhaps test the object alleged to have caused the damage. Further, Farmers Insurance Company had title to the car and, as an insurance company, unquestionably knew the importance of the car in allowing defendants to prepare a defense. Indeed, Farmers Insurance in anticipation of a subrogation claim allowed the car to be destroyed only after its experts had thoroughly examined the car and had issued their opinions on the cause of the fire.

■ Plaintiffs contend that, unlike *Graves*, all the evidence was not destroyed. This argument is without merit. Although two wires from the car were saved and plaintiffs have photographs of the car and other damaged property, defendants were unable to inspect, as plaintiffs' experts were, the most important evidence because of plaintiffs' actions. Plaintiffs were the only individuals with first-hand knowledge of the physical evidence which is far more probative under these circumstances in determining whether the vehicle caused the fire than photographs and two wires taken from the trunk area. The physical object itself in the precise condition immediately after an accident may be far more instructive and persuasive to a jury than oral or photograph descriptions. (*Nally v. Volkswagen of America, Inc.* (1989), 405 Mass. 191, 198, 539 N.E.2d 1017.) As a matter of sound

public policy, an expert should not be permitted intentionally or negligently to destroy such evidence and then substitute his or her own description of it. (*Nally*, 405 Mass. at 198, 539 N.E.2d at 1021.) Under these particular circumstances, the existence of the two wires and the photographs is not a substitute for the car, the object on which plaintiffs based the complaint.

Plaintiffs next attempt to distinguish *Graves*. They argue that the trial court erred in sanctioning plaintiffs because defendants had notice of the fire and failed to investigate. Plaintiffs assert that Village Pontiac had notice of impending litigation because of Nancy Gill's telephone call the morning after the fire in which she blamed the car for causing the fire. Plaintiffs assert that through the general agency principle of imputed knowledge General Motors also had notice. We do not believe under these circumstances that a single telephone call from an understandably distraught customer serves as notice of impending litigation so as to warrant defendants to investigate the fire in this case.

Plaintiffs also contend that the sanction barring all evidence including the photographs, the wires and testimony regarding the scene was overly broad. We do not believe that the trial court's order barring all evidence, direct and circumstantial, concerning the condition of the car was an abuse of discretion. Although plaintiffs retained two wires and pictures of the car and the fire scene, defendants had no opportunity to inspect the car and, in particular, the location and condition of the area surrounding the wires. While defendants are currently able to observe the pictures and the wires, those observations would be without the benefit of the inspection of the whole car. Defendants would be able to observe only evidence gathered by plaintiffs without reference to the object alleged to have caused the damage.

Considering all of plaintiffs' arguments, we find no abuse of discretion in the sanction imposed.

Alternatively, plaintiffs contend that even excluding any evidence of the condition of the car, there was enough evidence to preclude summary judgment on their complaint alleging product liability and negligence.

In a cause of action based on product liability, the plaintiff must prove that the injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time the product left the manufacturer's control. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 623, 210 N.E.2d 182.) The general rule is that the occurrence of an injury, in

and of itself, is insufficient to show the existence of a product defect. (*West v. Deere & Co.* (1991), 145 Ill. 2d 177, 180.) However, a *prima facie* case that a product was defective and that the defect existed when it left the manufacturer's control is made by proof that in the absence of abnormal use or reasonable secondary causes, the product failed to perform in the manner reasonably to be expected in light of its nature and intended function. (*Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, 574, 357 N.E.2d 449.) A plaintiff can make out a *prima facie* case of a defective product based on an inference when, contrary evidence notwithstanding, an injured plaintiff claims a defective product was a cause of the injury and the proof of the defect is based on testimony of a malfunction. Sabin, *Inference of Defect in Illinois Products Liability Law: A Proposal for Resolution*, 77 Ill. B.J. 26, 27-28 (1988).

To state a cause of action for negligence, plaintiff must show the existence of a duty, a breach of that duty, and an injury to the plaintiff which is proximately caused by that breach. (*Ziemba v. Mierzwa* (1991), 142 Ill. 2d 42, 45, 566 N.E.2d 1365.) Liability may not be based upon speculation, imagination or mere conjecture. *Kalata v. Anheuser-Busch Cos.* (1991), 144 Ill. 2d 425, 437, 581 N.E.2d 656.

On a defendant's motion for summary judgment, a plaintiff is not required to establish his case as he would at trial, but he must present some factual basis that would arguably entitle him to a judgment. (*West*, 145 Ill. 2d at 182.) If all the evidence before the trial court would be insufficient to go to a jury and would require the court to direct a verdict, summary judgment should be entered. *Pyne v. Witmer* (1989), 129 Ill. 2d 351, 358, 543 N.E.2d 1304.

■ In this case, plaintiffs cannot make out a *prima facie* case of product liability based on an inference of a defect, nor can they show negligence. Plaintiffs were barred from presenting any evidence, direct or circumstantial, concerning the condition of the car. Any cause of action for product liability based on an inference must still show that the damage resulted from a condition of the product. After all evidence of the condition of the car is barred, no evidence remains upon which the trial court could find product liability or negligence. Therefore, the trial court did not err in granting defendants' motion for summary judgment.

■ One other matter remains unresolved. After plaintiffs' brief was filed, defendants filed a motion to strike and dismiss the appeal. Plaintiffs responded, and we ordered the matter to be taken with the case. Although there are deficiencies in plaintiffs' brief with respect to the citing of certain deposition testimony not of record, we have

630

considered only the record before the trial court and, accordingly, deny the motion.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

UNVERZAGT and DUNN, JJ., concur.