Andrew E. **THOMAS**, Plaintiff,

v.

**BOMBARDIER–ROTAX MOTORENFA-BRIK, GmbH, et al.,** Defendants.

No. 93 C 702.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 8, 1996.

**586**

Richard J. Grossman, Steinberg, Burtker & Grossman, Ltd., Chicago, IL, for Thomas.

Karin J. Lindgren, Sedgwick, Detert, Moran & Arnold, Chicago, IL and David Debusschere, Sedgwick, Detert, Moran & Arnold, San Francisco, CA, for Bombardier–Rotax.

## MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Plaintiff Andrew Thomas (Thomas) brought this diversity suit against defendants Bombadier–Rotax Motorenfabrik, GmbH (Rotax) and Decker Aero Power, Inc. (Decker Aero), alleging that defendants were negligent, had breached an implied warranty of safety, and are strictly liable for injuries he sustained when his experimental ultralight aircraft crashed during a test flight.[1] Before this court is Rotax's second motion to bar certain evidence relating to the aircraft[2] for failure to preserve material evidence. For the following reasons, defendant's motions to bar evidence and for summary judgment are granted.

## DISCUSSION[3]

In a products liability action the parties have a duty to preserve material evidence for the dual purpose of "both the proof and *defense* of such cases." *See e.g.,* *Shelbyville Mut. Ins. Co. v. Sunbeam Leisure Products Co.,* 262 Ill.App.3d 636, 199 Ill.Dec. 965, 969, 634 N.E.2d 1319, 1323 (5th Dist.) (emphasis added), *appeal denied* 157 Ill.2d 523, 205 Ill.Dec. 187, 642 N.E.2d 1304 (1994).[4] A court may sanction a party for

---

1. It was Rotax who manufactured and Decker Aero who sold the engine with which plaintiff's aircraft was outfitted.

2. In the first motion, Rotax sought to exclude evidence relating to both the engine and the plane. In this motion, Rotax seeks only to exclude evidence relating to the plane and all its parts save the engine.

3. The first opinion, reciting the relevant facts and denying defendants' motion, is reported at 869 F.Supp. 551 (N.D.Ill.1994).

4. At the time of the first summary judgment motion defendants argued that Illinois spoliation law applied. Plaintiff assumed that it did also and this court followed Illinois law, relying upon *State Farm Fire & Casualty v. Frigidaire,* 146

F.R.D. 160 (N.D.Ill.1992), which in turn relied upon *Guaranty Trust Co. of New York v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). It then made no difference, as we denied the motion. If we now assume that federal law would permit the evidence to be used (and we do not here determine that assumption is correct), the reliance upon Illinois law is in fact outcome determinative. In those circumstances we briefly revisit our earlier conclusion.

*Guaranty Trust* was not the last word from the Supreme Court about the *Erie* doctrine. Subsequent cases, such as *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); and *Burlington Northern Railroad Co. v. Woods,* 480 U.S. 1, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987), have prompted considerable judicial and scholar-

the destruction of material evidence if the destruction was unreasonable and would prejudice the other party. *H & H Sand & Gravel Haulers Co. v. Coyne Cylinder Co.*, 260 Ill.App.3d 235, 198 Ill.Dec. 367, 374–75, 632 N.E.2d 697, 704–05 (2d Dist.), *appeal denied* 157 Ill.2d 500, 205 Ill.Dec. 162, 642 N.E.2d 1279 (1994) (Table).

In an earlier opinion this court denied defendant's motion to bar evidence regarding the engine. However, as to the evidence regarding the plane, we wrote:

> The destruction of the [aircraft] proves to be more problematic in that [plaintiff] was the only party in control of the aircraft and neither defendant participated in its destruction. Nevertheless, we feel that defendants have failed to demonstrate that they are prejudiced by their inability to examine the aircraft.... [D]efendants have not demonstrated how examination of the aircraft ... is necessary to determine if these [other potential] causes played a part in the crash. Thus, this case is similar to *H & H Sand & Gravel Haulers*, in which the court held 'when the alteration or destruction of evidence does not deprive a party from establishing their case, there has been no prejudice and sanctions which deprive the parties a trial on the merits are inappropriate'.

*Thomas v. Bombardier–Rotax*, 869 F.Supp. 551, 556 (N.D.Ill.1994) (citation omitted). Since that opinion about the plane turned on defendant's failure to show prejudice, we read the bolstered record to determine whether defendant has made a proper showing of prejudice.

■ Before doing so we revisit briefly Illinois spoliation law. As Judge Norgle pointed out in *Iowa Ham Canning, Inc. v. Hardt-*

*mann*, 870 F.Supp. 238 (N.D.Ill.1994), the Illinois law does not present a well-defined legal standard. Some cases emphasize the egregiousness of the conduct, *e.g., Graves v. Daley*, 172 Ill.App.3d 35, 122 Dec. 420, 526 N.E.2d 679 (3d Dist.1988), or the lack of any bad faith, *H & H Sand & Gravel Haulers Co. v. Coyne Cylinder Co.*, 260 Ill.App.3d 235, 198 Ill.Dec. 367, 632 N.E.2d 697 (2d Dist. 1994), while others emphasize the prejudice, *e.g., Farley Metals, Inc. v. Barber Colman Co.*, 269 Ill.App.3d 104, 206 Ill.Dec. 712, 645 N.E.2d 964 (1st Dist.1994). Judge Norgle thought there should be no bar if the plaintiff was not contemplating a lawsuit at the time the evidence was destroyed, but we do not think that can be a bright line test, even though knowledge of a possible claim and the subsequent spoliation are relevant to any determination. We believe we must look both to the reasonableness of the destruction and the resulting prejudice.

■ We turn first to the issue of prejudice. Plaintiff contends that Rotax reversed the cylinder head at the factory. Rotax disputes that, although it does not, apparently, dispute that the cylinder head was reversed when it was delivered to Decker Aero or that a reversed cylinder head could cause the engine to overheat and seize. Its position is that the cylinder head most probably was reversed when the engine was partially taken apart after the crash and prior to the delivery to Decker Aero.

For purposes of their second motion, Rotax has filed a new Rule 12(M) statement and retained Professor Weldon Garrelts to testify as an expert witness. Garrelts insists, based on his review of the evidence, that neither cylinder head was installed backwards at the factory. He is, however, unable to determine

ly discussion—and confusion—about the present reach of the *Erie* doctrine. The post–*Guaranty Trust* balancing tests appear to apply only, or virtually only, to cases not specifically governed by controlling federal procedural or appellate rules or statutes. Perhaps in those cases not governed by specific federal rules or statutes, outcome determinative state law controls unless there is an overriding federal interest. *See* Chemerinsky, *Federal Jurisdiction*, § 5.3.5 at 301–302 (1994). Perhaps in those cases the outcome determinative factor (with the inevitable forum shopping if that factor does not control)

must be balanced against federal and state interests. *See* Redish & Phillips, *Erie and the Rules of Decision Act: In Search of the Appropriate Dilemma*, 91 Harv.L.Rev. 356 (1977). Perhaps a somewhat different analysis should prevail. But here no federal rule specifically governs, there is no apparent significant federal interest, Illinois does have a significant interest in influencing conduct, and reliance upon Illinois law is in fact (and not just possibly or perhaps) outcome determinative. In those circumstances we believe Illinois law controls, regardless of the legal formulation.

why the engine seized "because the ultralight aircraft that crashed is not available to me for inspection." (Garrelts aff., def. mo. to bar evid., exh. 3, ¶ 7). He also stated:

> Thomas' engine could have overheated and seized as a result of any one of a great number of reasons. In order to determine what caused this crash I need to examine the aircraft wreckage to analyze: the fuel-oil mixture ratio, the propeller settings, possible cooling interference and various engineering design elements of this experimental ultralight aircraft, newly designed and built by the Plaintiff. Any one of these issues could have caused a piston to overheat, the engine to seize and the aircraft to crash; however, I cannot begin to analyze any of these issues unless I can examine the aircraft wreckage—that is why, for example, the FAA is very careful to search out and preserve every piece of an aircraft after a crash.

(*id.* at ¶ 8). Two employees of Decker Aero also testified that an engine can seize for a variety of reasons. The affidavit and the testimony answer the questions left open in the court's prior opinion and show that defendant is prejudiced in its inability to examine the aircraft. *See Shelbyville,* 199 Ill.Dec. at 970, 634 N.E.2d at 1324 (affirming the trial court's dismissal based on the "uncontroverted affidavit which established prejudice to the defendant by the plaintiff's treatment of the [product]").

In addition, the "schematics and the flight log," which plaintiff contends "is as close to a 'black box' as one is likely to find in an ultralight craft," is insufficient to overcome the prejudice in being unable to examine the aircraft. First, unlike the aircraft itself, these are non-objective pieces of evidence, having been prepared by plaintiff.[5] Second, when defendant requested plaintiff's design and construction plans, and the records regarding the pre-flight testing (def. reply memo., exh. 1), plaintiff responded that none was available (def. reply memo., exh. 2). *See American Family Insurance Co. v. Village Pontiac–GMC, Inc.,* 223 Ill.App.3d 624, 166 Ill.Dec. 93, 96, 585 N.E.2d 1115, 1118 (2d Dist.1992) ("Plaintiffs were the only individu-

als with first-hand knowledge of the physical evidence which is far more probative under these circumstances in determining whether the vehicle caused the fire than the photographs and two wires taken from the trunk area. The physical object itself in the precise condition immediately after an accident may be far more instructive and persuasive to a jury than oral or photograph descriptions.") (citation omitted). Finally, what is particularly relevant is that "[t]he materials plaintiff alleges are defective [*i.e.,* the engine] remain available while the remnants of the [aircraft] which defendants claims may have caused the [seizure] are forever gone. [Garrelts's] theory may, indeed, be unfounded, as plaintiff claims. However, without the [plane], defendants are forced to rely upon secondary evidence ... in exploring that theory. The unfairness is obvious." *Farley Metals, Inc. v. Barber Colman Co.,* 269 Ill. App.3d 104, 206 Ill.Dec. 712, 718, 645 N.E.2d 964, 970 (1st Dist.1994), *appeal denied* 162 Ill.2d 566, 209 Ill.Dec. 801, 652 N.E.2d 341 (1995) (Table).

■ We turn then to the reasonableness of plaintiff's destruction of the aircraft. This court does not know when Thomas first contemplated litigation (before or after he had the evidence destroyed) because Thomas' attorney refused defense counsel's attempt to discover this information during plaintiff's deposition. (Thomas dep., at pp. 92–95, def. reply memo., exh. 3). We do know, however, that plaintiff preserved the wreckage for an extended period, that Decker told plaintiff of the reversed cylinder head, and that the evidence was destroyed several weeks later. Plaintiff then had the information upon which he bases his claim. Perhaps he then thought he knew what had caused the crash and had no need to preserve the aircraft. But plaintiff, an experienced pilot capable of designing his own plane, should reasonably have known that any thorough investigation of the crash had to include an examination of the wreckage.

■ Since the purpose of any sanction is to further discovery, *A & A, Inc. v. Great Century Ins. Co.,* 259 Ill.App.3d 73, 196 Ill.

---

**5.** The logbook is unreliable. (Thomas dep. at pp. 44, 50–51, def. reply memo., exh. 3).

Dec. 837, 841, 630 N.E.2d 1002, 1006 (1st Dist.1992), we are reluctant to impose a sanction that will in effect dispose of the case. *H & H Sand & Gravel,* 198 Ill.Dec. at 372, 632 N.E.2d at 702; *Martinez v. Pfizer Laboratories, Div.,* 216 Ill.App.3d 360, 159 Ill.Dec. 642, 651, 576 N.E.2d 311, 320 (1st Dist.1991). We are persuaded, however, that plaintiff's intentional destruction of the evidence was not reasonable in the circumstances and deprived defendant "of the ability to establish its case." *Allstate Ins. Co. v. Sunbeam Corp.,* 53 F.3d 804, 807 (7th Cir.1995). Whether we grant the motion or deny it, one of the parties will be seriously prejudiced. We believe that prejudice must be to plaintiff, who was responsible for the destruction. We grant Rotax's motion to bar evidence of the cause of the crash. And that ruling means that plaintiff cannot prove his case. Accordingly, the motion for summary judgment is granted.